No. 14-1118 – *J. Michael Teets, Commissioner; William E. Keplinger, Jr., Commissioner; and The Hardy County Commission v. Wendy J. Miller, John A. Elmore, B. Wayne Thompson, Ovid Need, and Bonnie L. Haggerty*

**FILED**

**June 3, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Benjamin, Justice, concurring in part and dissenting in part:

In the more than forty years since the initial 1975 enactment of the Open Governmental Proceedings Act (the "Act"), we have never exempted an entire field of government regulation from its purview. No matter how controversial the subject matter or how politically charged the atmosphere surrounding the decision-making process, we have always adhered to the Legislature's admonition that "[t]he people in delegating authority do not give their public servants the right to decide what is good for them to know and what is not good for them to know." W. Va. Code § 6-9A-1 (1999). The principle that "*all* meetings of *any* governing body shall be open to the public," *id.* § 6-9A-3 (1999) (emphasis added), has been so well-established that it was seemingly no longer open to question. Until today, that is.

The Act admits of limited exceptions that authorize a public agency to convene an executive session. Most of these exceptions are familiar to the public, and they have been narrowly construed and enforced only insofar as necessary to protect individual privacy rights, the agency's sensitive commercial interests, and the agency's entitlement to the confidential advice of legal counsel. *See generally* W. Va. Code § 6-9A-4 (1999). We may presume that such exceptions, incorporated within the statutory

1

framework itself, reflect the legislative intent expressed in the Act's very first sentence that exceptions to the Act be "few" and "clear." *See id.* § 6-9A-1 (mandating that "the proceedings of public agencies be conducted openly, with only a few clearly defined exceptions"). Outside the presence of the discrete conditions set forth in § 6-9A-4, the Act applies without limitation "[e]xcept as expressly and specifically otherwise provided by law." *Id.* § 6-9A-3.

According to the majority opinion, the Emergency Ambulance Service Act of 1975 ("EASA") constitutes such an express and specific exception by virtue of its provision that "no procedure or proceedings, notices, consents or approvals shall be required in connection therewith except as may be prescribed by this article." W. Va. Code § 7-15-18 (the "no notices" clause); *see ante* 20–22, 27–28. I disagree. The reason for the Legislature's inclusion of the "no notices" clause within EASA is anything but express and specific. Absent the requisite specificity, I believe the proper legal conclusion to be that EASA must be read in conjunction with West Virginia's long-established and unambiguous public interest requiring open governmental proceedings, and not as an exception that frustrates such public interest.

The "no notices" clause appears verbatim in two other West Virginia enactments, each of which existed prior to EASA. The second of those enactments, the Urban Mass Transportation Authority Act of 1968, W. Va. Code § 8-27-1 *et seq.*, has

1

only occasionally been the subject of litigation and does not, by its text and structure, otherwise illuminate the proper interpretation of its "no notices" clause.[*] Going back a few years farther, the 1968 and 1975 enactments repeat—and are evidently derived directly from—the 1953 statute expanding and regulating the establishment of county public service districts (the "PSD statute"). There, the Legislature provided exactly as in EASA, *i.e.*, that "[t]he provisions of this article shall be liberally construed to accomplish its purpose and no procedure or proceedings, notices, consents or approvals, are required in connection therewith except as may be prescribed by this article." W. Va. Code § 16-13A-21 (1994).

If the "no notices" clause in EASA means that county commissions may propose to create an ambulance service in secret, as the majority says they may, then one must likewise expect the same to be true with respect to the creation of county public service districts under the ambit of the PSD statute. But nothing could be farther from the truth. The PSD statute instead specifically provides that, upon a motion by a county commission or submission of a voter petition "proposing the creation, enlargement, reduction, merger, dissolution or consolidation of a public service district," the commission must also immediately fix a date for a public hearing,

---

[*] The "no notices" clause in the Urban Mass Transportation Authority Act provides, identically to its counterparts in EASA and in the PSD statute, *infra*, that "no procedure or proceedings, notices, consents or approvals shall be required in connection therewith except as may be prescribed in this article." W. Va. Code § 8-27-25 (1976).

which date so fixed shall be not more than forty days nor less than twenty days from the date of the action. Within ten days of fixing the date of hearing, the county commission shall provide the Executive Secretary of the Public Service Commission with a copy of the order or petition and notification of the time and place of the hearing.

W. Va. Code § 16-13A-2 (2005). In addition, the clerk of the county commission "shall cause notice of the hearing and the time and place thereof, and setting forth a description of all the territory proposed be included therein to be given by publication as a Class I legal advertisement," such notice required to be published "at least ten days prior to the hearing." *Id.* The notice and hearing provisions specifically incorporated within the PSD statute are substantially similar to those safeguards now afforded generally by operation of the Act. Consequently, whatever notice the "no notices" clause is intended to dispense with cannot be the fundamental public notice attendant to the creation of the statutory subject matter.

The proper application of the "no notices" clause was illustrated in the course of our decision in *Rhodes v. Malden Pub. Serv. Dist.*, 171 W. Va. 645, 301 S.E.2d 601 (1983). In *Rhodes*, an original proceeding in mandamus, the county PSD had imposed sewage charges on the petitioner's garage apartment, notwithstanding that it was connected to a septic tank and not the public line. When the charges went unpaid, the PSD placed a lien on the petitioner's property. Our decision cited the provision containing the "no notices" clause in a footnote, implicitly for the proposition that an exception exists where the notice is "prescribed by this article." *Rhodes*, 171 W. Va. at

3

648 n.3, 301 S.E.2d at 604 n.3.  The PSD statute itself required landowners to pay sewer charges only "after the date of receiving notice that such facilities are available."  *Id.* at 648, 301 S.E.2d at 604 (citation omitted).

We denied the writ without prejudice, on the ground that an unresolved issue of fact remained concerning whether the petitioner had received the requisite notice, such that mandamus was premature.  The point to be taken from *Rhodes* is that the "no notices" clause was enacted solely to remove external impediments to a PSD's *execution* of its statutory mission, and not in any way to obscure the governmental processes leading to its *creation*.  There is no reason to believe that the Legislature's intent was any different in enacting EASA.

The upshot is that the "conflict" imagined by the majority opinion between the Act and EASA, *see ante* at 26-27, simply does not exist.  Both statutes can be given their full force and effect without impinging on the other.  The crux of the matter decided today is whether the public must be afforded the notice and opportunity to comment before its own county government may provide for and impose upon it a levy to sustain emergency ambulance service.  The majority opinion misses this, instead simply focusing on a more abstract inquiry, "*i.e.* the Commission's provision of emergency ambulance service." *Ante* at 27.  Upon proper statement of the issue before this Court, it is plain to

4

see that the Act is the more specific statute applicable to this case and that the notice requirements of the Act must be given effect.

In light of the foregoing, it follows that I dissent to that portion of the majority opinion which exempts the Hardy County Commission from the notice requirements of the Open Governmental Proceedings Act in creating, outfitting, and funding an emergency ambulance service. Given the repeated and substantial violations of the Act, I believe the circuit court acted within its discretion by voiding the Commission's un-noticed actions in connection with the service and by awarding attorney fees to the Hardy County Citizens. The Commission should not have been enjoined, however, from starting over pursuant to properly noticed meetings, and the circuit court was without authority to impose personal liability for Commission expenditures on the individual Commissioners. I also agree with the majority opinion that the circuit court's ruling requiring the law firm of Steptoe & Johnson to refund the fees it received for services rendered should be reversed for the reasons set forth in the majority opinion.

For these reasons, I respectfully concur in part, and dissent in part, from the majority opinion.

5